SMITH, Appellant, v. POPPEN, et ux, Respondents.

(230 N. W. 229.)

(File No. 6968.   Opinion filed April 11, 1930.)

*Hasche & Foley,* of Watertown, *Robert A. Storm,* of Brooking, and *T. B. Thorson,* of Pierre, for Appellant.

*McFarland & Kremer,* of Watertown, for Respondents.

CAMPBELL, J. On December 5, 1925, defendant M. H. Poppen executed a warranty deed conveying to the defendant Bertha M. Poppen, his wife, 399 acres of land in Deuel county, S. D., which deed was placed of record December 9, 1925.

On December 21, 1925, the indebtedness of M. H. Poppen to Estelline State Bank, represented by notes originating prior to the conveyance to his wife above mentioned, amounted with interest to $7,468.57, and on that date he executed and delivered to the Estelline State Bank his promissory note in that amount, covering thereby his indebtedness for past-due principal and interest upon the prior notes. Thereafter, defendant M. H. Poppen executed and delivered to the Estelline State Bank three additional notes, one dated March 5, 1926, in the sum of $250, one March 12, 1926, for $250, and one April 12, 1926, for the sum of $200, which notes represented additional advancements of money to M. H. Poppen at the several execution dates, and had no connection with the debt of $7,468.57 originating prior to December 5, 1925, and represented by the note dated December 21, 1925. On February 5, 1926, M. H. Poppen paid to the bank the sum of $4,000, which was applied and indorsed on the note of $7,468.57. In September, 1926, the Estelline State Bank suspended business and was taken over by the plaintiff F. R. Smith, superintendent of banks, for liquidation. In October, 1926, defendant Bertha M. Poppen applied for a real estate loan on the premises conveyed to her by her husband, as aforesaid, in the amount of $6,500, with the intention of using the proceeds thereof to pay the indebtedness of her husband to the Estelline State Bank and certain other indebtedness of his. The loan was completed and the proceeds thereof deposited to the credit of her husband, M. H. Poppen, in the Farmers' National Bank of Brookings, S. D., on November 10, 1926. On that date defendant M. H. Poppen delivered to the examiner in charge of the Estelline State Bank his check in the amount of $4,555.43, drawn upon said Farmers' National Bank of Brookings, it being his intention thereby to pay in full his indebtedness to Estelline State Bank, which said indebtedness, with interest, equalled the amount of the check and was represented by the note of December 21, 1925, due April 1, 1926, for $7,468.57, with a $4,000 indorsement thereon, and the notes of March 3, 1926, March 11, 1926, and April 10, 1926, all due October 1, 1926, to the aggregate principal amount of $700. The

examiner in charge stamped the notes paid and surrendered them to M. H. Poppen, and deposited the check for collection on the day of its receipt by transmitting the same by mail to the Corn Exchange Bank of Sioux Falls, S. D. The check, progressing through usual channels, did not reach the Farmers' National Bank of Brookings for payment until the evening of November 16th, or the morning of November 17th. The Farmers' National Bank of Brookings closed its doors on November 16, 1926, and the check was not paid. The check was duly protested, and on December 3, 1926, an action was instituted in the circuit court for Hamlin county, S. D., by F. R. Smith, superintendent of banks, in charge of said Estelline State Bank, against M. H. Poppen to recover judgment upon said check, which action was contested and tried and resulted in a judgment in favor of the plaintiff and against M. H. Poppen, bearing date September 7, 1927, for $4,827.33. No appeal was taken from this judgment, and it has become final between the parties thereto.

M. H. Poppen filed a claim against the Farmers' National Bank of Brookings for the amount of his deposit there, which he had attempted to transmit to the present plaintiff by the check of November 10th, hereinbefore referred to, and by stipulation, and without prejudice to the rights of either party, M. H. Poppen assigned his said claim against the Farmers' National Bank of Brookings to the plaintiff herein, and from this claim dividends to the extent of approximately $2,000 have been received and applied upon the judgment of September 7, 1927, in favor of plaintiff and against M. H. Poppen, hereinbefore referred to, leaving a balance thereon of approximately $2,800 with some interest, as to which balance execution has been issued against the defendant M. H. Poppen and returned unsatisfied, both in Hamlin county where the judgment originated, and in Deuel county where a transcript was filed.

Under these circumstances, plaintiff instituted the present action in July, 1928, against both the defendants, alleging its judgment of September 7, 1927, and that said judgment was founded upon a claim against defendant M. H. Poppen which originated and accrued prior to December 5, 1925, alleging the balance due upon said judgment and the return of execution thereon unsatisfied, reciting the conveyance by M. H. Poppen to Bertha Poppen

on December 5, 1925, hereinbefore mentioned, the insolvency of M. H. Poppen, and that said conveyance was without consideration and with intent to defraud creditors, and praying that the same be so adjudged. The defendants answered separately, admitting the conveyance, but alleging that the same was for good and valuable consideration and without fraudulent intent, and the matter came on in due course for trial to the court and a jury. At the close of plaintiff's case, defendants interposed the following motion:

"The plaintiff having rested, the defendants and each of them separately move the Court for findings of fact and conclusions of law at this time, on the ground and for the reason that the plaintiff has wholly failed to prove the material allegations of his complaint, and particularly for the reason that no fraud whatever has been shown in this transaction. In fact, the contrary appearing, and that no showing whatsoever has been made that the transfer of this land in December, 1925, was made for the purpose of defrauding the creditors of this debtor, and this creditor in particular, it appearing first, that this creditor was not a creditor upon an indebtedness upon which this suit is instituted in December, 1925, and did not become a creditor until November, 1926, at the earliest, this claim being reduced to judgment in the year 1927, and therefore was not an existing creditor at that time on a claim upon which this suit is based; and second, that it does not appear by any evidence whatever that this transfer was made in fraud of any creditor or creditors. There is an absolute lack of proof on the part of the plaintiff as to any fraudulent intent or fraud in the transfer as made at the time it was made, and in fact, it appears that the transfer was made in good faith, and that said good faith followed the entire transaction from the time it was made in December, 1925, down to and including November, 1926, that is November, 1926, when a bona fide attempt was made to pay the indebtedness upon which—the very indebtedness involved herein, and which at that time was made by the voluntary efforts and actions on the part of both of these defendants."

This motion was granted by the court, and, pursuant thereto, the court made findings and conclusions in favor of the defendants and entered judgment thereon, from which judgment and an order denying his motion for a new trial plaintiff has appealed.

Under the Uniform Fraudulent Conveyances Act, which is in force in this state (chapter 209, Laws 1919), a conveyance may be fraudulent as to creditors if it is made with actual intent to defraud (section 7, chapter 209, Laws 1919), or it may be fraudulent as to existing creditors if it is made for less than a fair consideration as defined in the act (section 3, chapter 209, Laws 1919), and the grantor, who is already indebted or is about to incur indebtedness, is thereby rendered insolvent within the definition of the act (sections 1, 2, 4, and 6, chapter 209, Laws 1919).

In this case, there is no showing of actual intent to defraud. The conduct of the respondents after the questioned conveyance, in paying $4,000 upon M. H. Poppen's debt to appellant and securing the necessary money to pay the balance by mortgage on the conveyed property and making a good-faith effort to transmit that money to appellant, which effort failed through no fault of respondents, affirmatively indicates that neither Poppen nor his wife had any actual intent by the conveyance in question to defraud appellant, and appellant so conceded upon the oral argument. Nevertheless, under the statute, appellant is entitled to attack the conveyance regardless of the actual intent of the parties thereto if, as a matter of fact, it was without fair consideration and M. H. Poppen was thereby rendered insolvent.

This is without doubt one of those "hard cases" which may very easily and often do "make bad law." Suppose that M. H. Poppen had never conveyed the realty in question to his wife, but had himself mortgaged it to raise money to pay his debt to appellant, and the circumstances were otherwise identical. It has been adjudicated between the parties by a competent court that M. H. Poppen did not succeed in paying his debt to appellant by delivery of the check of November 10, 1926, notwithstanding his efforts and intentions, and judgment has been rendered in favor of appellant and against M. H. Poppen for the amount of that debt, which judgment has become final. Certainly it could not be disputed that such judgment would be a lien against the real estate in the hands of M. H. Poppen if he had not conveyed it to his wife, however harsh such a result may seem. As a matter of law, the same result must follow, in substance, if the conveyance from Poppen to his wife was without fair consideration as defined in the Fraudulent Conveyances Act, and rendered him insolvent when made, and

appellant was a creditor of M. H. Poppen at the time of the conveyance.

The third and fourth findings of fact of the trial court were as follows:

"III. That on December 5th, 1925, the Defendant, M. H. Poppen, owned other real estate in addition to the real estate hereinbefore described and other property, and on December 5th, 1925, had property enough to pay his debts and was solvent; and on said date December 5th, 1925, was indebted to the Estelline State Bank of Estelline, South Dakota, in the sum of approximately Seven Thousand ($7000.00) Dollars, or in the sum of approximately the face of the note Exhibit '8,' introduced in evidence herein.

"IV. That on December 5th, 1925, for a good, fair and proper consideration, the Defendant, M. H. Poppen transferred the real estate specifically described in Finding of Fact No. II herein, to his wife, the Defendant, Bertha M. Poppen, which transfer and deed of said premises was filed for record and recorded in the office of the Register of Deeds of Deuel County, South Dakota, immediately thereafter, and which deed was given for *a fair, full and valuable consideration,* as well as for the support and comfort of Bertha M. Poppen and her family."

Appellant, by apt assignment of error, questions the sufficiency of the evidence to support these findings, and we will examine first the finding with reference to insolvency.

█ The evidence in the case on that point rests entirely upon the testimony of respondent M. H. Poppen, called as an adverse witness. On December 21, 1925, M. H. Poppen owed the Estelline State Bank $7,468.57, and the evidence clearly shows and he admits that, on December 5, 1925, he was indebted to the bank in that amount minus what few dollars are therein included by way of interest covering the period from December 5th to December 21st. He testified that at that time he owed his mother about $2,000, and owed a mortgage of $2,500 on his homestead. He testified that after conveying the Deuel county land to his wife he had left 80 acres of land and his homestead, which was a 20-acre tract. He further testified that within two or three months after conveying the Deuel county land to his wife he sold the 80-acre tract to his mother for a consideration of approximately $6,000, being $4,000 in money (which he applied on his indebtedness to Estelline

State Bank) and the cancellation of his debt to his mother approximating $2,000. He further said:

"After having deeded that 80 acres to my mother and the 399 acres to my wife I had left the place we live on in Estelline. It contains 20 acres. There has been a mortgage against that for the last five years. That is also my homestead. During the last few years it has been worth probably five or six thousand dollars, somewhere along there. * * * I have been living on that as a homestead. I have had no other property since making the deed to my wife on December 5, 1925. There is no other property out of which the sheriff could have satisfied any judgment that is claimed by the bank. There has not been any since December 5, 1925."

The evidence shows that the 399 acres conveyed by respondent M. H. Poppen to his wife in December, 1925, was worth approximately $75 to $100 per acre. Respondent Bertha Poppen, in applying for a loan thereon, stated the value of the land as $100 per acre and of the buildings thereon as $6,000, making a total valuation of $45,900. At the time of conveying this property to his wife, respondent M. H. Poppen owed the Estelline State Bank approximately $7,500. He owed a mortgage on his homestead in the amount of $2,500 and he was indebted to his mother in an amount which we may approximate at $2,000, making his total indebtedness, according to his own statement, $12,000. Also, according to his own testimony, the only property he had left after this conveyance was his 20-acre homestead occupied by himself and wife, and worth, by his own figures, not more than $1,000 over and above the amount of his homestead exemption, and an 80-acre tract, the value of which is not shown except as it may be inferred from the fact that he sold it to his mother some time between December 5, 1925, and February 5, 1926, for a consideration approximating $6,000.

It is true that M. H. Poppen, speaking with reference to the time when the proceeds of the $6,500 loan on the Deuel county land made by his wife was deposited in his name in the Farmers' National Bank of Brookings, in response to the question asked him by appellant's counsel, "At that time you were solvent, were you?" replied, "Yes, sir." We do not deem that material. We think the situation must be viewed as of the time of the conveyance. If, on December 5, 1925, respondent was rendered insolvent within the

definition of section 2, chapter 209, Laws 1919, by the conveyance to his wife, and less than a fair consideration as defined in the statute was paid for the conveyance, then, as to creditors on that date, the conveyance is fraudulent without regard to actual intent, and we do not think the situation is changed by reason of the fact that on November 10, 1926, money borrowed by Bertha Poppen on the conveyed real estate was deposited in the name of M. H. Poppen in the Farmers' National Bank of Brookings so that, for the period from November 10 to November 16, 1926, he had on deposit in his name in a going bank enough money to pay his debts. Nor is the situation changed by the fact that he made a good faith effort to transmit enough of that money to appellant to pay his obligation to appellant. We think it sufficiently appears from the testimony of M. H. Poppen, prima facie at least, that the conveyance to his wife on December 5, 1925, rendered him insolvent within the definition of section 2, chapter 209, Laws 1919, and the evidence very plainly and clearly preponderates against the finding of the learned trial judge to the contrary.

.We turn now to the fourth finding to the effect that the conveyance in question was given for a fair, full, and valuable consideration. The only evidence in the record, with reference to the matter of consideration, is the deed itself which is a short form warranty deed, pusuant to the statute, and states that the conveyance is made "for and in consideration of one dollar and other valuable consideration."

■ ■ It is, we think, the law that upon the whole case the burden of proof as to all elements necessary to establish that a conveyance is fraudulent as to creditors rests upon the attacking creditor, and in this case the burden of proof upon the whole case is upon appellant to show (there being no claim of actual fraudulent intent) that the conveyance rendered the grantor insolvent when it was made and was for less than a fair consideration. That burden of proof never shifts, but as we have pointed out in Peck v. Peck, 51 S. D. 157, 212 N. W. 872, the burden of advancing with the testimony does shift from time to time throughout the case. As hereinbefore held, we think appellant established sufficiently for a prima facie case the insolvency of the grantor at the time of the conveyance. We are also of the opinion that the appellant established a sufficient prima facie case upon the point of

lack of fair consideration when he proved that the conveyance recited merely a nominal consideration, and that the grantee therein named was the wife of the grantor. Those facts being made to appear, we think the duty of advancing with the testimony shifts from the attacking creditor to the parties to the conveyance who must thereupon assume the duty of introducing evidence sufficient to establish prima facie that there was in fact a fair consideration for the conveyance, as "fair consideration" is defined in section 3, chapter 209, Laws 1919. Smith v. Tosini, 1 S. D. 632, 48 N. W. 299; Churchill & Alden Co. v. Ramsey, 45 S. D. 454, 188 N. W. 742; Little v. Plummer, 51 S. D. 27, 211 N. W. 972; Buhl v. Mc-Dowell, 51 S. D. 603, 216 N. W. 346; Murray v. Sumner, 71 Ind. App. 607, 125 N. E. 422; Thompson v. Schiek, 171 Minn. 284, 213 N. W. 911; Wright v. Craig, 40 Or. 191, 66 P. 807; note 56 L. R. A. 817 at page 828.

We are therefore of the opinion that there is no evidence to support the fourth finding of fact.

■ At the time of the oral argument of this case the writer hereof inclined to the view that perhaps appellant might be estopped from attacking the conveyance in question, and interrogated counsel along that line. Estoppel is not pleaded in the answer. Estoppel, if it exists, must be pleaded and proved in defense, and could hardly justify the granting of the motion made in the instant case at the close of plaintiff's evidence. In any event, upon a more careful examination and consideration of the record, we fail to find any facts therein presented upon which an estoppel should be predicated. On this point, see Dolan v. Newberry, 200 Iowa, 511, 202 N. W. 545 (petition for rehearing denied 200 Iowa, 511, 205 N. W. 205).

We are clearly of the opinion, unfortunate as the situation of respondents may be, that the court erred in granting respondents' motion and entering judgment, and that the cause must be remanded for a new trial.

■ In view of the remand, one other matter presented by the record requires attention. Appellant seeks to have the conveyance set aside or to have its judgment of September 7, 1927, against M. H. Poppen declared a lien upon the conveyed realty as against both respondents. Payments made on the judgment should be construed as applicable to the oldest indebtedness thereby represented, and

the balance now due upon this judgment therefore should be construed to include the items aggregating $700 principal, originating in the three notes dated respectively March 3, March 11, and April 10, 1926, together with interest thereon. To that extent appellant did not become a creditor of respondent M. H. Poppen until several months after the execution and recording of the conveyance in question. The evidence affirmatively showing a lack of actual fraudulent intent in the making of the conveyance, the transfer is not subject to attack by subsequent creditors except as provided by section 5, chapter 209, Laws 1919, which is not applicable to the instant case. It follows, therefore, that appellant's judgment against M. H. Poppen should not in any event be declared a lien upon the conveyed premises to any greater extent than the balance due upon the judgment after eliminating therefrom (for the purpose of such lien only, of course) the amount included therein, which represents these three subsequent notes and the interest upon them.

The judgment and order appealed from are reversed.

BROWN, P. J., and POLLEY, SHERWOOD, and BURCH, JJ., concur.